# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 27, 2009

Charles R. Fulbruge III
Clerk

No. 08-10934

ALBERT CLINTON RICHARDS

Petitioner-Appellee

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, BENAVIDES, and CLEMENT, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Respondent-Appellant Nathaniel Quarterman, Director of the Correctional Institutions Division of the Texas Department of Criminal Justice ("the State") appeals the district court's grant of habeas relief under 28 U.S.C. § 2254 to Petitioner-Appellee Albert C. Richards ("Richards"). We affirm.

## I. Factual and Procedural Background

Richards was convicted, after rejecting a plea offer of five years, of murdering Cullen Baker ("Baker") in Tarrant County, Texas, and sentenced to twenty-five years in prison on October 30, 2003. At trial, the prosecution put

1

forth evidence that Richards and Baker had an altercation around 3:00 a.m. the morning of February 14, 2003, during which Baker suffered injuries resulting in his death roughly twenty-four hours later from a brain hemorrhage. The prosecution presented eyewitness testimony from Arthur Brown, Jr. ("Brown"), and Leo Qualls ("Qualls"). Brown, Qualls, Richards, and Baker, all of whom were homeless, were together during part of the day of February 13, 2003, and, according to the prosecution, the early morning of February 14. All four used drugs and alcohol during this time. Most of the relevant activities took place in an area near a tent on a concrete slab for church services for the homeless (the "slab church") and another tent in which Baker lived.

According to Brown's testimony, which was substantially corroborated by Qualls's testimony, Baker and Richards had had a minor altercation over Baker's use of a racially derogatory term. Brown and Qualls left to do some panhandling, and when they returned they witnessed the assault that, according to the prosecution, led to Baker's fatal injuries. As they returned in Brown's car, Richards appeared to be asleep on the concrete slab as Baker was walking around him holding both a stick they had previously seen Richards possess and a piece of rebar (a length of steel). Baker stated that he had bested Richards in a fight and choked him into unconsciousness. While Brown was still in his car, Richards got up, tied his shoes, picked up a piece of asphalt, and started hitting Baker with the asphalt. Richards knocked Baker down and struck him on the head and face nine or ten times, when Brown separated the two before leaving. According to Qualls, Baker and Richards were talking when Brown and Qualls left.

Richards's brother, Roger Richards, who had discovered Baker's body while looking for Richards, testified that Richards had said that he (Richards) had hit Baker in self-defense. Richards himself testified that he struck Baker

2

in self-defense, presenting a version of events fairly similar to that of Brown and Qualls, asserting that Baker had attacked him with a stick while he was asleep before choking him into unconsciousness with the same stick. After coming to, Richards testified, he used a rock that Baker had thrown at him while he was asleep to hit Baker only two or three times in order to get Baker's stick away from him.

The Texas Second Court of Appeals affirmed Richards's conviction, *Richards v. State*, No. 2-03-453-CR, 2005 WL 1048716 (Tex. App.—Fort Worth May 5, 2005), and the Court of Criminal Appeals refused discretionary review. Richards filed an application for a state writ of habeas corpus. Richards raised several claims in this application, including that his trial counsel was ineffective for failing to present exculpatory evidence, request a lesser-included offense instruction, or present Richards's medical records. As provided by Texas law, the application was handled by the trial court in which Richards was convicted. *See* Tex. Code. Crim. Proc. art. 11.07. The trial court, at the State's suggestion, ordered a hearing consisting only of an affidavit from Richards's trial counsel, Jill L. Davis ("Davis"), which she filed February 2, 2006.

In her affidavit, Davis stated, without additional explanation, that she "presented any and all exculpatory evidence available to [her]," and that she did not request a lesser-included offense instruction because she believed that such a request "would have been frivolous." Davis further stated that she did not offer Richards's medical records into evidence because "I could not present a medical records 'alibi' with clear conscience based on my duty as a lawyer." With regard to interviewing the prosecution's witnesses before trial, Davis stated in her affidavit that because the prosecution's witnesses were not made available to the defense, it was nearly impossible to interview them before the day of trial, but that she did speak to them before their testimony in the witness area of the

3

courthouse.

On October 27, 2006, the State filed its proposed findings of fact, which the state trial court adopted six days later, recommending that Richards be denied relief. The state trial court's findings mirror Davis's affidavit testimony on all relevant points. The Court of Criminal Appeals denied Richards's application without written order on January 31, 2007. On February 20, 2007, Richards filed a pro se petition for writ of habeas corpus in the district court, alleging multiple grounds for relief. The magistrate judge made his findings, conclusion, and recommendation on April 24, 2008, and recommended that the petition be denied. The district court accepted the magistrate's recommendation except as to Richards's ineffective assistance of counsel claim. After first directing the State to provide copies of witness statements, reports of witness statements, and related material, the district court issued a memorandum opinion on June 2, 2008, discussing the court's "areas of concern relative to petitioner's trial representation," appointed counsel for Richards, and ordered an evidentiary hearing. At the hearing July 21–22, the witnesses were Tiffany Burks, one of the prosecutors at Richards's criminal trial; Richards; Davis; and Deborah Cauffman ("Cauffman"), Davis's legal assistant.

On August 27, 2008, the district court entered its memorandum opinion and order conditionally granting Richards's petition on the grounds that the state court's rejection of Richards's ineffective-assistance-of-counsel claim: (1) was "based on unreasonable determinations of the facts in the light of the evidence presented in the state court proceeding" and (2) involved "unreasonable applications of clearly established federal law, as determined by the Supreme Court." *Richards v. Quarterman*, 578 F. Supp. 2d 849, 855 (N.D. Tex. 2008); *see* 28 U.S.C. § 2254(d). As an initial matter, the district court made credibility assessments of the witnesses at the hearing, concluding, "[a]fter having heard

4

Davis's testimony and compared it with the documentary evidence, and having observed her demeanor on the witness stand," that "she was doing what she could to assist the State in defeating her former client's habeas petition, even if it meant being less than candid."[1] *Richards*, 578 F. Supp. 2d at 855, 858. The district court further noted that "[t]o the extent any findings and conclusions the court expresses in this memorandum opinion and order are at variance with testimony Davis gave at that hearing, the variance is because the court is unwilling to accept as accurate the testimony of Davis." *Id.* The district court made similar findings as to Cauffman, whereas it found Burks to be truthful and Richards to be truthful except as to whether Davis called him to testify without warning, although even there the court was "not so certain Richards intentionally misrepresented what happened." *Id.*

The district court concluded that Davis's performance was constitutionally deficient because she failed to present exculpatory evidence, request a lesser-included offense instruction, place into evidence Richard's medical records from the Department of Veterans Affairs, and, more generally, to interview important

---

[1] The district court's opinion provides numerous examples of what it considered evidence of Davis's lack of candor, including that (1) contrary to Davis's contention that until "mid-trial (when Richards's brother testified that Richards told him that he had hit Baker with a rock) Richards consistently had maintained that he had not hit Baker," in fact, "Davis knew in advance of trial that Richards struck Baker with a rock [and] she knew from the outset that Richards told his brother that Richards hit Baker with a rock"; (2) despite Davis's contention that she visited Richards in jail several times, the record supports Richards's contention that she visited only once before the jury was chosen; (3) although Davis stated in her affidavit that she and her investigator went to the scene of the crime and interviewed many acquaintances of Richards and Baker and wrote down their names, she failed to produce any notes of these interviews, and her trial notebook contained none of the things that "normally would be contained in a file pertaining to trial preparation of a criminal case;" and (4) some of Davis's statements in her affidavit were contrary to those made at the evidentiary hearing or on the record of the criminal trial—for example, Davis's claim that she spoke to the State's witnesses in the courthouse prior to their testimony is contradicted by the trial record with respect to several witnesses. *Richards*, 578 F. Supp. 2d at 855–58.

witnesses before trial, have an organized plan of defense, and conduct Richards's defense in an acceptable manner. But for Davis's failures, the district court concluded, there is a reasonable probability that the result of Richards's trial would have been different: (1) the jury might not have convicted Richards of murder, (2) the jury might have convicted Richards of a lesser offense, and (3) the judge might have imposed a lesser sentence. The State timely appealed. This Court granted the State's motion for stay pending appeal.

## II. Standard of Review

In reviewing a grant of habeas relief, the Court examines "factual findings for clear error and issues of law de novo." *Barrientes v. Johnson*, 221 F.3d 741, 750 (5th Cir. 2000). "An ineffective assistance of counsel claim presents a mixed question of law and fact." *Ward v. Dretke*, 420 F.3d 479, 486 (5th Cir. 2005). When examining mixed questions of law and fact, the Court employs "a de novo standard by independently applying the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous." *Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005). "A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." *Rivera v. Quarterman*, 505 F.3d 349, 361–63 (5th Cir. 2007).

This case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a federal court may not grant habeas relief after an adjudication on the merits in a state court proceeding unless the adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an  unreasonable determination of the facts in light of the evidence

6

presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has "made clear that the 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quotations omitted). "In other words, a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Id*. However, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Further, "because the *Strickland* standard [the standard applicable to a claim for ineffective assistance of counsel] is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

Under § 2254(d)(2), "a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Rice v. Collins*, 546 U.S. 333, 338 (2006). "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' § 2254(e)(1)." *Id*. at 338–39.

## III. Discussion

### A. Whether the district court failed to apply AEDPA's standard of review and improperly disregarded the state court's factual findings.

The State argues that the district court did not follow the proper standard of review when it granted Richards an evidentiary hearing and "dismissed the trial court's findings as meaningless," and that under this Court's precedent, Richards "was never entitled to a hearing." The State maintains that the state habeas court's findings, which were adopted by the Court of Criminal Appeals, are entitled to a presumption of correctness even though it did not conduct a live evidentiary hearing, pointing to cases holding that a full and fair hearing need not involve live testimony, particularly where, as here, the trial court was also the state habeas court. *See, e.g, Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000); *Buxton v. Lynaugh*, 879 F.2d 140, 144 (5th Cir. 1989). Further, according to the State, by adopting Davis's affidavit in its findings, the trial court—which was familiar with Davis and with her performance in Richards's trial—made an implicit credibility determination in favor of Davis and against Richards which is also entitled to a presumption of correctness. Moreover, the State argues, there was no need to develop the record in this case, and the evidentiary hearing was of questionable value because neither Davis nor Burks could remember the five-year-old murder trial well enough for the district court to make credibility determinations overriding those made by the state habeas court.

We hold that the district court did not abuse its discretion in deciding to hold an evidentiary hearing. Under § 2254(e)(2), if a habeas applicant has "failed to develop the factual basis of a claim in State court proceedings," a federal habeas court may not hold an evidentiary hearing on the claim unless

certain conditions are met. *Morris v. Dretke*, 413 F.3d 484, 499 (5th Cir. 2005). Here, the State does not argue in its opening brief that the § 2254(e)(2) bar applies,[2] but rather maintains that the hearing was "unnecessary and did not elucidate the issues."

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro*, 550 U.S.at 468. "In determining whether to grant a hearing, under Rule 8(a) of the habeas Court Rules 'the judge must review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted.'" *Hall v. Quarterman*, 534 F.3d 365, 368 (5th Cir. 2008) (quoting *Schriro*, 550 U.S. at 473). In making this determination, courts must consider whether an evidentiary hearing could "enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474. "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.* "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

In this case, Richards's petition alleged serious failures by Davis which are

---

[2] The State's reply brief states that "[f]actual questions left unanswered as a result of Richards's failure to exercise due diligence in the state court cannot provide the basis for a federal evidentiary hearing", citing 28 U.S.C. § 2254(e)(2). Assuming that this lone statement is an argument that Richards failed to develop the factual basis of his claim, it is waived. *See United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived.").

not refuted by the record, and Davis's explanations of her trial conduct, as adopted by the state habeas court, are conclusory and in varying degrees of tension with the trial record.[3] Thus, the district court was within its discretion to conclude that the evidentiary hearing could enable Richards "to prove the petition's factual allegations," and that those, if proven, "would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474. Moreover, even if the witnesses's memories were not ultimately complete, this cannot, *ex ante*, preclude a district court from holding an evidentiary hearing, which included documentary evidence as well as live testimony, about a five-year-old case.

Nonetheless, as the State correctly observes, the state habeas court's factual determinations, including its credibility findings, are entitled to a presumption of correctness under § 2254(e)(1), regardless of whether the state court held a full and fair hearing. *See Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001) ("[A] full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review."). However, after reviewing the record on appeal and the district court's thorough and considered opinion, we

---

[3] For example, Davis stated that she "presented any and all exculpatory evidence available to [her]," but she provided no explanation as to why she did not present more evidence of the attack as described by the victim before his death, which differed in material ways from the incident described by the prosecution's eyewitnesses and Richards himself. Further, Davis's explanation of her failure to request a lesser-included offense instruction was merely that she believed that such a request "would have been frivolous." As discussed below, it is clear from the record that such a request would not have been frivolous. Davis stated in her affidavit that she "could not present a medical records 'alibi' with clear conscience based on my duty as a lawyer," but it is not all clear from the record why this would be. Finally, as noted above, Davis's assertion that she spoke to the prosecution's witnesses in the courthouse prior to their testimony is, in several cases, contradicted by the trial record, which makes clear that she was speaking to those witnesses for the first time during trial.

conclude that the district court afforded proper deference to the state court's decisions and rulings: although critical of the state court proceedings, the district court specifically found that "[a]ny presumption of correctness of determinations made by the state court relevant to Richards's ineffective-assistance-of-counsel ground has been rebutted by clear and convincing evidence." *Richards*, 578 F. Supp. 2d at 854; *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.").

## B. Ineffective Assistance of Counsel

### 1. Applicable law

The Supreme Court set out the governing principles of ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a charge of ineffective assistance of counsel in state court, a petitioner must satisfy both prongs of *Strickland's* two-part test by demonstrating that (1) counsel's performance was deficient and (2) counsel's deficient performance caused actual prejudice to the petitioner's defense. *Id.* at 687.

To prove deficient performance, "a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness," *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006), under the then "prevailing professional norms." *Strickland*, 466 U.S. at 688. In evaluating counsel's performance, the Supreme Court has long referred to the American Bar Association ("ABA") Standards for Criminal Justice as "guides to determining what is reasonable." *Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Wiggins*, 539

11

U.S. at 524; *Strickland*, 466 U.S. at 688. Moreover, courts must apply a "strong presumption that counsel performed adequately and exercised reasonable professional judgment." *Virgil*, 446 F.3d at 608 (quotation omitted). Because "every effort [must] be made to eliminate the distorting effects of hindsight," *Strickland*, 466 U.S. at 689, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Virgil*, 446 F.3d at 608 (quotations omitted). At the same time, however, courts are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. We will address each aspect of Davis's performance the district court found deficient before considering whether Richards was cumulatively prejudiced thereby.

## 2. Failure to present exculpatory evidence

The district court found that Davis rendered ineffective assistance of counsel by failing to present—and, through hearsay objections, preventing the prosecution from presenting—crucial exculpatory evidence:

> [Davis] did not present important exculpatory evidence in the form of statements made by Baker before his death concerning the events that led to his death. Had she presented that evidence, or allowed

it to be presented, the jury would have heard evidence that directly contradicted the testimony the jury heard from persons who said they were eye witnesses to an assault by Richards on Baker that the State claimed caused Baker's death. The jury would have known that Baker told two people that a person by the name of Ron was the principal assailant. Through that exculpatory evidence, Davis could have made plausible arguments that, even though Richards hit Baker, others also hit him, and that the conduct of the others occurred sometime after the altercation between Richards and Baker and led to Baker's death. Those arguments would have been consistent with a self-defense theory and an alternative contention that, at most, Richards was guilty of an assault offense.

*Richards*, 578 F. Supp. 2d at 859–60 (footnote omitted). The unpresented exculpatory evidence in question is, essentially, as follows. First, testimony from witness Joy Thomas ("Thomas"), who lived in a house near the slab church and who testified that Baker came, injured, to her home at 3:00 a.m. on February 14, 2003, that Baker told her that he was attacked by three to five people after he had fallen asleep after eating sausages with a man named Ron (whom Thomas described as a black male over six feet tall, whereas Richards is five feet nine inches tall), that he was hit in the head with a brick while held down, that Ron had the brick, and that the attack may have been motivated by an earlier incident in which Baker hit a woman in a dispute over a can. By a sustained hearsay objection, Davis prevented Thomas from answering the prosecutor's question as to what Baker said while at Thomas's house. Second, testimony from Officer J.R. Oakley ("Oakley"), the police officer who arrived at the Thomas residence after she called 911 to report the attack on Baker. According to Oakley's report, Baker told him that he was woken at 3:30 a.m. by an attack by four men, one of whom had a stick and another of whom had a brick. Baker told Oakley that he knew the men with the brick and stick, and that they were

13

attacking him in retaliation for reporting a friend of theirs to the police.[4] Davis's sustained hearsay objection prevented Oakley from answering the prosecutor's question as to what Baker said about the time the altercation occurred and whether Baker was able to name his assailants. Oakley was permitted to testify that Baker gave him names, but he was not permitted to relate those names. Third, testimony from witness Michael Fornier ("Fornier"), a homeless person who was in the area of the slab church at around 6:00 a.m. to 7:00 a.m. on February 14 and talked with Baker, that while they were talking a black male roughly six feet, three inches tall came walking by, at which point Baker became extremely agitated and said "that is the man right there that beat me last night." Due to another sustained hearsay objection from Davis, Fornier was not allowed to tell the jury what Baker told him. Finally, testimony from Richards that the fight described by Brown, Qualls, and Richards himself took place at 10:00 or 10:30 p.m, rather than 2:30 or 3:00 a.m. as described by Brown.

Davis testified at the evidentiary hearing that she had kept out the evidence from Thomas and Oakley because it might, in addition to exculpatory material, have implicated Richards, which would have been inconsistent with her initial defense theory—the theory that others were responsible for Baker's death and that Richards never struck Baker, or "mob theory" as she called it—which she was forced to abandon when Roger Richards testified, to her surprise, that Richards had told him he (Richards) struck Baker in self-defense. The district court rejected this contention, concluding that Davis had always intended to put forth some form of self-defense theory:

---

[4] Although identified only as "SUSP 1" in Oakley's report, according to the arrest affidavit later prepared by Detective S.J. Waters ("Waters"), Baker identified the man with the brick as "Albert." The reader will recall that Albert is Richards's first name.

> Apparently recognizing the significance of Davis's failure to present this exculpatory evidence, or even to allow it to be presented when the prosecutor attempted to do so, Davis strived at the July 21–22 hearing to create the appearance of a strategic reason why she kept the exculpatory evidence from the jury. In the process, Davis has engaged in what might best be described as legal prestidigitation.

*Id.* at 860.

On appeal, the State argues first that, contrary to the district court's conclusion that Davis invented her "mob theory" after trial, the record supports Davis's testimony, noting Davis's opening statement, in which she told the jury that they will hear that "a period of time elapsed between some kind of altercation between this man or another man or four other men or eight other men, and you are not going to know because no one could because so much time had expired . . . between any of these altercations and the time of Baker's death," and that Davis's decision not to introduce it was part of a reasoned trial strategy. Thus, according to the State, Davis made a sound strategic decision to object to Oakley's testimony—as Davis explained, she did not want the jury to hear that Baker identified Richards to the police as one of his attackers. Similarly, Davis made a reasoned decision to object to Thomas's testimony: as Davis testified at the evidentiary hearing, when Davis interviewed Thomas before her trial testimony, Thomas told her that Baker mentioned Richards, and Davis wanted to keep this testimony from the jury. Through her objection and subsequent cross-examination, the State argues, Davis was able to have the jury hear Baker's statement to Thomas that "they just jumped me" without implicating Richards, as well as produce evidence from Thomas that, several days prior to his death, Baker had had to run for his life from six or seven guys who were angry with him for having hit a woman.

15

The extent to which Davis's decisions were governed by a reasoned trial strategy is an important question. *See Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir. 1992) (noting that "whether counsel's omission served a strategic purpose is a pivotal point in *Strickland* and its progeny" and that this "crucial distinction between strategic judgment calls and plain omissions has echoed in the judgments of this court"). After a careful examination of the record and reviewing the district court's lengthy account of its reasoning, and in consideration of both the district court's opportunity to observe the witnesses and assess their credibility and the deference due to the state court's findings under AEDPA, we are not convinced that the district court clearly erred in disregarding Davis's account of her trial strategy. *Cf. Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000) (stating that, after a bench trial, "[t]he burden of showing that the findings of the district court are clearly erroneous is heavier if the credibility of witnesses is a factor in the trial court's decision." (quotation omitted)). Although Davis's opening statement provides some indication that Davis intended, at some point and in some fashion, to put forth evidence of other attackers, Davis voir-dired on self-defense, her affidavit mentions only her self-defense theory and specifically states that Richards turned down the State's plea offer because he insisted he acted in self-defense, and the State itself argued to the district court that Davis was following a self-defense theory shortly before the evidentiary hearing. *Cf. Wiggins*, 539 U.S. at 526–27 ("[T]he 'strategic decision' the state courts and respondents all invoke to justify counsel's limited pursuit of mitigating evidence resembles more a *post-hoc* rationalization of counsel's conduct than an accurate description of their deliberations prior to sentencing."). Further, as the district court correctly

observed, writings in Davis's trial notebook strongly suggests both that Richards told her early on that he had hit Baker with a rock and that she knew that Richards had told his brother that as well.

Even if we were to accept Davis's version of her trial strategy, however, there does not appear to be any legitimate strategic reason for Davis's failure to present evidence (or more evidence) that another attack, involving multiple assailants, took place after the incident described by Brown[5] once Richards's involvement in an altercation with Baker became known through Roger Richards's testimony. *See Moore*, 194 F.3d at 604 (5th Cir. 1999) ("The Court is . . . not required to condone unreasonable decisions parading under the umbrella of strategy.").

The State next argues that the exculpatory evidence the district court held Davis should have introduced would have been cumulative. As the State notes, the jury heard from Oakley that he initially searched for four suspects, and from

---

[5] The State argues that the district court erred in holding that Richards's claim that Davis was ineffective for failing to raise an issue about the lapse of time between Richard's assault on Baker and his arrival at Thomas's house is unexhausted and procedurally defaulted, maintaining that Richards completely omitted the timeline argument in his state writ application. *See* 28 U.S.C. § 2254(b)(1); *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his claim to the state courts."). However, contrary to the State's assertion, Richards did argue in his state application that Davis failed to present evidence that the fight between Richards and Baker took place at 10:00 to 10:30 p.m. *See Anderson v. Johnson*, 338 F.3d 382, 386–87 (5th Cir. 2003) ("[A]s a general rule dismissal is not required when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts." (quotation omitted)). Thus, in this case, the issue was fairly presented to the state court. *See Moore v. Quarterman*, 533 F.3d 338, 341 (5th Cir. 2008) (en banc) ("Determining whether a petitioner exhausted his claim in state court is a case- and fact-specific inquiry.").

Waters that as a result of Baker's police report, the police began to look for two suspects—Ron Watkins and Albert Richards. Further, Davis extensively questioned Waters regarding Fornier's statement to the police in an effort to show that Richards did not fit the description of the man Baker pointed out to Fornier as the man who had beaten him, and, further, was successful in getting Waters to say that Fornier had identified Watkins as the man pointed out by Baker as the perpetrator. Although the district court dismissed this testimony as "somewhat garbled,"[6] the State argues that it is quite clear. Thus, according to the State, the jury heard Baker's account of his assault three different times.

The State is correct that cumulative testimony generally cannot be the basis of an ineffective assistance of counsel claim. *See United States v. Harris*, 408 F.3d 186, 191 (5th Cir. 2005) ("This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel."). The fact that there is "some overlap" among the excluded testimony and what came out trial will not necessarily preclude relief, however. *Harrison*

---

[6] In its June 2 opinion, the district court stated:

Testimony was developed by defense counsel Davis from detective S.J. Waters to the effect that a person who matched one of the descriptions she had been given of a suspect was Ronald Watkins; and, while the testimony is somewhat garbled, part of it could be interpreted to convey that witness Fornier was told by Baker when Fornier was visiting with Baker the morning of February 14 that, in reference to Ron Watkins, "[t]here is one of the guys." In this same line of questioning, Davis obtained, by developing hearsay testimony from the detective, that Watkins had denied "that he had anything to do with it." Davis also was successful in obtaining a "[y]eah" answer from witness Brown to the question asking if Baker "told people Ronald Watkins had done it, too."

*Richards v. Quarterman*, 2008 WL 4068693 at *6 n.3 (N.D. Tex. June 2, 2008) (citations omitted).

18

*v. Quarterman*, 496 F.3d 419, 426 (5th Cir. 2007); *see also id.* (citing *Stewart v. Wolfenbarger*, 468 F.3d 338, 359 (6th Cir. 2007) (finding additional alibi testimony was not cumulative where it "would have added a great deal of substance and credibility" to the defendant's alibi defense). Here, while we agree with the State that Davis did present some of the evidence that the district court focused on, Davis failed to meaningfully bring out the significant differences between the version of the incident described by the prosecution's key eyewitnesses, Brown and Qualls (and Richards himself), and the attack as described by Baker to Oakley and Thomas—including the time, the motive, and whether Baker was asleep. We agree with the district court that, even applying a strong presumption to the contrary and giving appropriate deference to the state court's factual findings, Davis's failure to bring in this evidence was objectively unreasonable under prevailing professional norms and was not the product of a "conscious and informed decision on trial tactics and strategy." *Virgil*, 446 F.3d at 608 (quotation omitted); *see also Moore*, 194 F.3d at 611 ("Counsel's decision to exclude [exculpatory evidence], which produced no conceivable benefit to the defense and prejudiced Moore by precluding reliance upon a plausible alternative defensive theory that was supported by other evidence in the record, was professionally unreasonable."). Given the seriousness of Davis's unreasoned failure to present this powerful exculpatory evidence, we also agree that the state court's decision was an "unreasonable application" of *Strickland*. 28 U.S.C. § 2254(d).

## 3. Failure to Request a Lesser-Included Offense Instruction

The district court found that, given the opportunity, there is a "probability that the jury would not have convicted Richards of murder if it had been given

the option of convicting him of aggravated assault," and that Davis's failure to request such an instruction was not the result of any reasoned trial strategy. *Richards*, 578 F. Supp. 2d at 868. In reaching this conclusion, the district court found that the state trial court would have committed error in refusing such an instruction, and that, based on her testimony at the evidentiary hearing, Davis erroneously believed that a lesser included offense instruction is not available unless the State raises the elements of the lesser offense.

Under Texas law, there is a two-step test to determine whether a lesser included offense instruction should be given: first, the lesser included offense must be within the proof necessary to establish the offense charged; second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Alexander v. McCotter*, 775 F.2d 595, 600 (5th Cir. 1985) (quoting *Johnson v. State*, 623 S.W.2d 654, 657 (Tex. Crim. App. 1981)). An assault occurs when a person "(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse . . . or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Penal Code § 22.01(a)(1). The assault is aggravated when, among other circumstances, the person "(1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault." *Id*. § 22.02(a).

In this case, although the State does not dispute that aggravated assault is a lesser included offense of murder, it argues that there was no evidence that Richards was guilty only of the lesser charge because Richards admitted to intentionally hitting Baker and, under Richards self-defense theory, he is guilty

of nothing. Further, the State maintains, Davis's decision not to request a lesser included offense instruction was a conscious and informed decision: Davis testified at the evidentiary hearing that she did not think the State had enough evidence to convict Richards, and she did not want the jury to be able to convict him of the lesser charge.

Once again, after a careful examination of the record, and in consideration of both the district court's opportunity to observe the witnesses and assess their credibility and the deference due to the state court's findings under AEDPA, we agree with the district court that Davis's failure to request a lesser-included offense instruction was deficient and not a strategic decision. In her affidavit and again at the evidentiary hearing Davis stated that such a request would have been frivolous. A request for a lesser-included offense instruction on the basis that another assault, subsequent to that described by Brown, Qualls, and Richards, caused Baker's death would clearly not have been frivolous, and any doubt as to whether it was supported by the evidence is due to Davis's failure to introduce exculpatory evidence as discussed above. This is true even though Richards asserted self-defense: it would be entirely possible for the jury to believe that Richards did not act in self-defense but also believe that he did not kill Baker. Davis's testimony strongly suggests that she both failed to recognize this possibility[7] and misunderstood the law governing lesser-

---

[7] At the evidentiary hearing, the following exchange took place:

Richards's counsel: What element do you believe was missing from, first of all, aggravated assault with a deadly weapon?
Davis: Well, I don't believe that he committed an offense that he was criminally responsible for.
***
The district court: Because of self-defense?

21

included offenses.[8]   In these circumstances, we are convinced that Davis's contention that she did not feel the jury would convict of murder and did not want to give the jury the option of convicting of the lesser offense is a "*post-hoc* rationalization" rather than a genuine account of her decision-making process. *Wiggins*, 539 U.S. at 526–27.   We are further convinced that Davis's performance in failing to request a lesser-included offense instruction fell below an objective standard of reasonableness, and that the state court's conclusion to the contrary was an unreasonable application of *Strickland*.

## 4.  Failure to Put Richards's Medical Records into Evidence

The district court also concluded that Davis was ineffective for not submitting Richard's Veterans Administration medical records into evidence. Those records would have established Richards's ailments, about which he testified at trial and which included frequent chest pains treated with nitroglycerin and an inability to walk more than one-half block without stopping. In addition, the records would have shown that Richards had triple bypass surgery in June 2000 and a cerebrovascular accident in 2000, which left him with a left-sided weakness.  These records, the district court concluded, would have been important, credible evidence—Richards's own credibility was suspect because he admitted to doing crack and to lying to the police—that Richards's attack on Baker was not as described by Brown and Qualls.

---

Davis: Correct.

[8] During the evidentiary hearing, the district court gave the following summation of Davis's position, which was unchallenged by Davis: "She says if the state hadn't proven the elements of aggravated assault, then it would be frivolous to ask for a lesser included offense charge because there wouldn't be any evidence to support it. That's her position."

In her affidavit, Davis stated "I could not present a medical records 'alibi' with clear conscious [sic] based on my duty as a lawyer." At the evidentiary hearing, Davis stated that she decided not to submit Richards's medical records into evidence because she "didn't want to run the risk that the jury would say, well, on the one hand he's feeble and has bad, you know, bad medical conditions, but on the other hand, he's strong enough, you know, to do this." Davis also testified that she was concerned that if she did, Richards's jail disciplinary records would, as a consequence, be allowed into evidence.

Although the State argues that Davis had a strategic reason for not introducing the medical records, after a careful review of the record, we agree with the district court's conclusion that she did not, and that her proffered explanations were developed after the fact. Her explanations make no sense, nor do they explain the basis for her claim that her ethical duty as lawyer prevented her from entering the records into evidence: there is nothing implausible about being strong enough to hit someone two to three times with a rock in self-defense but not strong enough to kill the person. Moreover, evidence of Richards's weakness might have made his claim that he used the rock in self-defense more plausible. Further, as the district court pointed out, Davis's concern that the medical records would "open the door" for Richards's jail records did not stop her from asking Richards about his health conditions. Davis's failure to submit Richards's medical records into evidence was not the result of a reasoned, strategic decision, and was not "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In light of the absence of any credible explanation for this failure, we agree with the district court that the state court's conclusion to the contrary was an unreasonable application of *Strickland*, and

that its contrary factual findings were rebutted by clear and convincing evidence.

## 5. Failure to Interview Important Witnesses in Advance of Trial

Finally, the district court concluded that Davis's failure to interview Oakley, Qualls, Brown before trial, as well as her failure to interview Thomas and Fornier before the day of the trial, was constitutionally deficient performance.[9]  Davis stated in her affidavit that because the prosecution's witnesses were not made available to the defense it was nearly impossible to interview them before trial, but that she did speak to them in the courthouse before their testimony.  However, questions by Davis at trial clearly establish that she had never spoken with Oakley, Brown, or Qualls before they took the witness stand.  Moreover, although Davis suggested at the evidentiary hearing that her investigator had contacted the prosecution's witnesses, this is not mentioned in her affidavit.  Nor does Davis's trial notebook contain any notes or other evidence that these interviews took place, and Davis's testimony as to the existence and fate of any such notes or other evidence is confused and difficult to credit.  In addition, although Davis testified at the evidentiary hearing that her statement in her affidavit that it was "nearly impossible" to interview the prosecution's witnesses before trial referred to the fact that she could not force those witnesses to cooperate with her, she also stated that he could not recall any witness not cooperating with her investigator.  Although the State argues that these inconsistencies are the result of Davis's nervousness and lack of recall, based on the sizeable contradictions between Davis's testimony in her

---

[9] The district court also held that Davis was deficient for failing to have an organized plan of defense and effectively question witnesses.  Because these issues are intertwined, as the district court recognized, with the other grounds on which we affirm relief, we need not consider whether they form an independent basis for relief.

24

affidavit and at the evidentiary hearing, the lack of any sort of evidence of pre-trial interviews in Davis's trial materials, as well as Davis's often aimless questioning of witnesses at trial, we agree with the district court that Davis's pretrial investigation fell below an objective standard of reasonableness and was constitutionally inadequate. *See Anderson v. Johnson*, 338 F.3d 382, 391 (5th Cir. 2003) ("Guided by *Strickland*, we have held that counsel's failure to interview eyewitnesses to a charged crime constitutes constitutionally deficient representation." (quotation omitted)); *see also* ABA Criminal Justice Standard 4–4.1(a) ("Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty."). Moreover, given the fundamental importance of adequate pre-trial investigation, we again agree that the state court's decision was an "unreasonable application" of *Strickland*, and further that the state court's contrary factual findings have been rebutted by clear and convincing evidence. 28 U.S.C. § 2254(d), (e)(1).

## 6. Prejudice

We need not engage in a lengthy discussion of the prejudice prong. But for the deficiencies in Davis's performance described above, the jury would have heard compelling evidence that there was another, more serious assault on Baker after the one described by the prosecution's witnesses and Richards himself, as well as of Richards's documented frailties. Based on our review of

the record and considering the cumulative effect of Davis's inadequate performance, we think it is extremely likely that, but for Davis's objectively unreasonable representation of Richards, the jury would have concluded that the later assault led to Baker's death, and would have convicted Richards of, at most, aggravated assault. *See Strickland*, 466 U.S. at 694 (prejudice established when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Although we are mindful of the great deference afforded to the state habeas court's determination under AEDPA, in this case it is clear that the state court's conclusion that Richards was not prejudiced was an unreasonable application of *Strickland*, and its contrary factual findings have been overcome by clear and convincing evidence.[10]

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[10] The most troubling aspects of Davis's performance in this case are her failure, likely due, at least in part, to her deficient investigation, to adequately present the powerful exculpatory evidence available to her, as well her failure, due to her clear lack of knowledge of the pertinent law, to request a lesser-included offense instruction. Even assuming, *arguendo*, that no prejudice resulted from Davis's failure to submit Richards's medical records into evidence, we would affirm the district court's prejudice determination on these grounds alone.