# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40527

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

GUSTAVO GONZALEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, DENNIS, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Gustavo Gonzalez appeals the denial of his motion to vacate his conviction and sentence based on ineffective assistance of counsel ("IAC"). Because the district court's reading of the facts was not clearly erroneous, we affirm.

I.

A.

U.S. Border Patrol agents discovered that Gonzalez, a truck driver, was

No. 17-40527

hauling not only electronics but also over 1,500 kilograms of marihuana. Gonzalez was arrested and charged with possession with intent to distribute a controlled substance in excess of one thousand kilograms, in violation of 21 U.S.C. § 841(a)(1) (2012). Gonzalez agreed to plead guilty in exchange for the government's recommendation that he "be given maximum credit for acceptance of responsibility" and a within-guidelines sentence.

At his rearraignment, Gonzalez expressed a desire to plead guilty. The government provided a lengthy recitation of the alleged facts, which Gonzalez admitted the government could prove. The district court then asked why Gonzalez was transporting over 1,500 kilograms of marihuana, to which Gonzalez replied, "someone forced me to do that, sir." In response to the court's further questioning, Gonzalez claimed that he was transporting the drugs because his family in Matamoros, Mexico, was being threatened. That prompted the court both to explain the elements of a duress defense and to order a fifty-three-minute recess for Gonzalez and his attorney, Reynaldo Cisneros, to discuss whether to enter the guilty plea as previously planned. After that recess, Gonzalez stated before the court, "I want to go to trial."

Three days later, the court held a final pretrial conference. After a prolonged discussion concerning the prerequisites for a duress instruction, the court informed Gonzalez that, although it would continue to accept a guilty plea, it would not accept a plea bargain past that afternoon. Cisneros stated he had "made that very clear" to his client and that he had "explained the consequences of [ ] going to trial." Of salience was the likelihood the government would file a sentencing enhancement based on Gonzalez's prior felony drug trafficking conviction, which would increase his minimum possible

sentence from ten to twenty years.[1]  At the court's suggestion, the government agreed to wait four days—until the first day of trial—to file a notice of sentencing enhancement.[2]

Early on the first morning of trial, Gonzalez told U.S. marshals that he wished to speak with his attorney concerning whether he should plead guilty. Cisneros, however, arrived at the courtroom nearly four hours late, believing that the trial was scheduled to begin on a later day.  In the interim, the government filed its notice of sentencing enhancement.  The trial began shortly thereafter.

Gonzalez testified that members of the Zetas cartel had threatened his family and forced him to carry the load of marihuana to satisfy a "debt."  On cross-examination, Gonzalez clarified that such debt represented 109 pounds of the cartel's marihuana that was confiscated when he was caught transporting it seven years earlier.[3]  Nevertheless, he claimed that, on the day of the arrest by the Border Patrol, he knew "nothing about" the cargo he was carrying, including whether it included marihuana or even a controlled substance generally.

After deliberating for less than forty-five minutes, the jury found Gonzalez guilty of possession with intent to distribute more than one thousand kilograms of marihuana.  The district court regretfully imposed the statutory

---

[1] When Gonzalez was tried, § 841(b)(1)(A) specified that a conviction of possession with intent to distribute more than one thousand kilograms of marihuana would subject a defendant to "a term of imprisonment which may not be less than 10 years," which increased by ten years if the "violation [be] after a prior conviction for a felony drug offense[.]"  Five years later, Congress enacted a bill that reduced the enhancement's effect by five years.  *See* First Step Act of 2018, Pub. L. 115-39, 132 Stat. 5194 § 401(a)(2)(A)(i).

[2] Had Gonzalez pleaded guilty before the government filed notice, the enhancement would not have applied.  *See* 21 U.S.C. § 851(a)(1).

[3] Gonzalez's ensuing guilty plea in state court was the basis for the enhancement.

No. 17-40527

minimum of 240 months' imprisonment followed by 10 years' supervised release. This court affirmed on direct appeal. *United States v. Gonzalez*, 584 F. App'x 188, 190 (5th Cir. 2014) (per curiam), *cert. denied*, 135 S. Ct. 1539 (2015).

## B.

This is a collateral attack whose incipit was a *pro se* motion Gonzalez filed under 28 U.S.C. § 2255, seeking habeas corpus relief by asserting that Cisneros's performance was constitutionally ineffective. Specifically, Gonzalez claimed Cisneros incorrectly told him that a conviction under § 841(a)(1) requires proof the defendant knew the type and quantity of the alleged controlled substance and that, but for such erroneous advice, Gonzalez would have pleaded guilty before the government filed its notice of sentencing enhancement. Appropriate relief, Gonzalez contended, would therefore effect a substantial downward revision of his sentence.

The district court held two days of evidentiary hearings concerning Gonzalez's motion. Gonzalez testified that Cisneros originally counseled him to plead guilty but that, during the rearraignment hearing and in response to the court's discussion regarding a duress defense, Cisneros suggested Gonzalez pursue trial. Gonzalez further stated that Cisneros told him the government would have to prove he knew he was transporting marihuana specifically. Notwithstanding that, Gonzalez testified that, on the morning of his first day of trial, he "wanted to plead guilty and . . . stop the trial, because [he] felt that [Cisneros] was not ready" but that Cisneros's tardiness prevented him from doing so before the government filed its notice of enhancement.

Cisneros also testified at the hearings, both corroborating and contradicting certain parts of Gonzalez's testimony. Cisneros admitted he incorrectly advised Gonzalez that a conviction would require the government to prove

4

No. 17-40527

knowledge that the controlled substance both was specifically marihuana and was in excess of one thousand kilograms. Still, Cisneros contested the notion that he pushed Gonzalez to pursue trial, claiming that he counseled Gonzalez to plead guilty. Cisneros stated that it was in fact Gonzalez who wanted to present his case to a jury so that it could "hear the [cartel's] threats and the possibility of his duress defense." Even under his misunderstanding of the elements of the offense, Cisneros testified he told Gonzalez that the government's evidence was sufficient for a conviction.

In a twenty-seven-page memorandum and order, the district court denied the § 2255 motion. This court then granted a certificate of appealability, which the district court had previously denied.

## II.

### A.

"In an appeal from the denial of habeas relief, this court reviews a district court's findings of fact for clear error and issues of law *de novo*." *Wilson v. Roy*, 643 F.3d 433, 434 (5th Cir. 2011). "An [IAC] claim," such as this one, "presents a mixed question of law and fact." *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). "[T]he [reviewing] Court employs a de novo standard by independently applying the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous." *Id.* "A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." *Id.*

Because of conflicting evidence, whether there be a reasonable probability that Gonzalez would have pleaded guilty but for his constitutionally deficient counsel is ultimately a question of fact. In resolving such questions, we rely heavily on the district court's judgment, although we review the record for clear error. *See id.*

No. 17-40527

B.

The Sixth Amendment provides "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). That right "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

To succeed on a claim that IAC "result[ed] in a rejection of [a] plea offer and the defendant'[s subsequent] convict[ion] at the ensuing trial," a defendant need satisfy a two-pronged test. *Id.* at 163. First, he must show ineffectiveness, that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must establish prejudice, that "but for the ineffective advice of counsel there is a reasonable probability that," among other things, "the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)." *Cooper*, 566 U.S. at 164. "[R]easonable probability" means "a probability sufficient to undermine confidence in the outcome," *Washington*, 466 U.S. at 694, but "less than a preponderance of the evidence," *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008) (per curiam).

The parties agree that, by erroneously advising Gonzalez that a conviction under § 841(a)(1) requires the government prove the defendant knew the type and quantity of controlled substance he was trafficking, Gonzalez's counsel performed in an objectively unreasonable manner. But it is disputed whether Gonzalez suffered prejudice. The relevant question is therefore whether there be a reasonable probability that Gonzalez would have accepted the government's plea deal had he been counseled correctly as to the elements of the charged offense.

6

No. 17-40527

III.

Gonzalez asserts that he based his decision to stand trial on his attorney's incorrect advice concerning what the government was required to prove. Although Gonzalez repeatedly expressed a desire to plead guilty, Gonzalez claimed in his *pro se* § 2255 motion that "Cisneros . . . convinced [him] to change his mind and proceed to trial . . . by explaining that the government was required to prove beyond a reasonable doubt . . . that [Gonzalez] had knowledge he was possessing marijuana, as well as over 1,000 kilograms of that specific drug." Believing—erroneously—that ignorance thereof would be a "viable defense," Gonzalez "was persuaded by Cisneros to proceed to trial."

Certain testimonial evidence supports Gonzalez's assertion. At the habeas hearings, Gonzalez reiterated that his trial counsel had advised him a conviction would require proof that he knew he was transporting marihuana. And Cisneros corroborated that he incorrectly had advised his client as to the necessary elements for a conviction under § 841(a)(1). From such evidence, one might conclude at least the possibility that Gonzalez would have pleaded guilty but for the incorrect advice.

Other evidence suggests, however, that Gonzalez refused the plea agreement not in reliance on the elements of the crime but in favor of mounting a duress defense. Cisneros testified that he counseled Gonzalez to plead guilty, notwithstanding both the possibility, however remote, of proving duress and Cisneros's mistaken understanding of the essential elements for conviction. But Cisneros claimed that Gonzalez "wanted to go to trial . . , [b]ecause he . . . wanted the jury to hear the [cartel's] threats and the possibility of his duress defense." And even Gonzalez testified that Cisneros told him an acquittal depended on a duress theory, which "might be successful . . . due to all the violence that was happening in Mexico[.]" In fact, in two days of hearings,

7

No. 17-40527

Gonzalez never testified outright that he would have accepted the plea deal had he been properly informed as to the sufficient elements of the crime.

The most likely explanation for Gonzalez's refusal to plead guilty is that he decided to pursue a duress defense. Whatever his understanding of the elements the government would have to prove at trial, Gonzalez entered the courtroom on the day of his rearraignment determined to plead guilty. Nothing said during that hearing suggested that Gonzalez could prevail at trial under the theory that he did not know the type or quantity of controlled substance he was transporting.

If anything, statements made at the hearing suggested otherwise— Gonzalez admitted the government could prove everything it alleged,[4] and the court briefly stated how it should instruct a jury that it could convict.[5] The bulk of the proceeding—indeed, the very reason the court called a recess of nearly one hour—concerned Gonzalez's possible duress defense. And even a duress defense, the court explained, would be relevant if and only if the jury first should find "that the Government has proved, beyond a reasonable doubt, that Mr. Gonzalez committed the crime charged," that is, that the government proved the elements required for a conviction. It therefore appears unlikely that Cisneros's erroneous advice regarding those elements meaningfully affected Gonzalez's calculus of whether to accept the plea deal.[6]

---

[4] If the government were required to prove knowledge of the type and quantity of the controlled substance, it should seem odd that its statement of facts made no such allegation.

[5] The court stated it would "tell the jury" that a conviction would require it to find that Gonzalez had "voluntarily commit[ted] this crime, that [Gonzalez] . . . possessed the drugs voluntarily, that is something that [he] intended to do, that is some act that [he] undertook, and that [he] knew [he was] doing it and that it was [his] choice to do that," to which Gonzalez responded, "[y]es, I understand." Nowhere did the court suggest a jury would have to find Gonzalez knew precisely which drug it was or the quantity thereof.

[6] At the final pretrial hearing, when the court stated its casual assumption that Gonzalez would "get on the stand . . . and deny knowledge," Cisneros responded that his client

No. 17-40527

It is not for us to substitute our judgment for the district court's when weighing conflicting factual evidence. Even if our reading of the facts differed from the district court's, we would affirm absent a finding of clear error. *See Richards*, 566 F.3d at 561. Far from clearly erroneous, the district court's factual determinations are supported by the record. We therefore decline to disturb its disposition.

The order denying § 2255 relief is AFFIRMED.

---

was "not going to deny knowledge[.]" Perhaps Cisneros meant to say that Gonzalez was not planning on denying knowledge that he was transporting *a controlled substance*, but only disputing that he knew he was transporting *over a thousand kilograms of marihuana*. While possible, such would be a curious omission indeed if Gonzalez's decision to pursue trial even partially relied on the distinction.

No. 17-40527

JAMES L. DENNIS, Circuit Judge, dissenting.

I respectfully dissent. In my view, the district court erred in denying Gonzalez's § 2255 motion. It is undisputed that Gonzalez's attorney misadvised him of the law that would govern his case if he went to trial: The attorney informed Gonzalez that the government would have to prove that he knew the specific type and quantity of illegal drugs that were concealed in his cargo in order to convict him. The advice was wrong; the government only had to show that Gonzalez knew he possessed some kind of illegal drug. The record here demonstrates a reasonable probability that, if Gonzalez had been correctly advised, he would have followed through in accepting the plea offer that he, his attorney, and the prosecutor had already signed. Consequently, he would have received a sentence roughly half the length of the twenty-year enhanced sentence that resulted from his being convicted at trial. Under these circumstances, the appropriate remedy is to order the government to reoffer the plea bargain; if Gonzalez accepts, the trial court should then exercise its discretion to either vacate Gonzalez's conviction and resentence him accordingly or leave the conviction and sentence resulting from Gonzalez's trial undisturbed. *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012)

## I.

On March 13, 2013, Gonzalez arrived at a United States Border Patrol checkpoint at Sarita, Texas. Agents discovered several cardboard boxes collectively containing over 1,500 kilograms of marihuana among the cargo in Gonzalez's trailer. Gonzalez was charged with possession with intent to distribute marihuana in excess of 1,000 kilograms in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). On June 3, 2013, Gonzalez entered into a plea bargain in which he agreed to plead guilty in exchange for the government's

recommendation that he be given maximum credit for acceptance of responsibility and a within-guidelines sentence.

Gonzalez at first attempted to follow through with the agreement by entering a guilty plea at his rearraignment. When the district court asked Gonzalez why he was transporting the marihuana, however, he replied, "Someone forced me to do that, sir." The district court briefly explained the requirements of a duress defense to Gonzalez and then called a recess for Gonzalez to speak with his attorney, Reynaldo Cisneros. During this recess, Cisneros incorrectly told Gonzalez that if he went to trial, the government would be required to prove not only that Gonzalez knew he was transporting a controlled substance, but also that Gonzalez knew that he was specifically hauling a load of more than 1,000 kilograms of marihuana. Following the recess, Gonzalez told the court that he now wished to go to trial.

Before trial, the government filed a notice of sentencing enhancement that doubled the ten-year mandatory minimum sentence that Gonzalez would face. Trial commenced, and, after the close of evidence, the court correctly instructed the jury that "[t]he Government does not have to prove that the defendant knew the kind of controlled substance he possessed [or] that he knew its weight . . . ." The jury found Gonzalez guilty, and the district court sentenced Gonzalez to the enhanced statutory minimum of 20 years' imprisonment and 10 years' supervised release.

After his direct appeal was unsuccessful, Gonzalez filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He contended that Cisneros had provided constitutionally ineffective assistance during his rearraignment by wrongly advising him regarding the scienter the government would have to establish if he went to trial—that is, that the prosecution would have to prove his knowledge of the specific type and

quantity of the drug that he hauled in order to convict him.  Gonzalez stated this bad advice persuaded him to turn down the plea agreement and go to trial. Following two evidentiary hearings, the district court denied Gonzalez's § 2255 motion, opining that, although Cisneros's performance was clearly deficient, Gonzalez had not established that it was the bad advice that caused him to forgo the plea agreement and proceed to trial.

## II.

The majority concludes that Gonzalez's desire to pursue a duress defense makes it unlikely that Cisneros's flawed advice as to scienter "meaningfully affected Gonzalez's calculus of whether to accept the plea deal." Maj. at 8.  I respectfully disagree.  The two defense theories that Gonzalez pursued were not inconsistent.  In fact, together they were synergistic.  The chronology of events suggests Gonzalez was fully prepared to plead guilty until Cisneros's incorrect advice convinced him he possibly had two consistent grounds for acquittal that reinforced each other—duress and the government's inability to prove scienter as Cisneros had misstated it.  Gonzalez likely behaved rationally, evaluating the strength of *both* defenses relative to the government's case, and this balance was significantly different in reality than Cisneros's incorrect advice led Gonzalez to believe.  And that Gonzalez trusted and was influenced by Cisneros's misstatement is corroborated by the strategy he and his attorney in fact employed at trial.  There is no evidence contradicting these conclusions, and I would accordingly hold that Gonzalez has demonstrated a reasonable probability that his attorney's deficient performance resulted in his electing to go to trial and receiving a substantially longer sentence.

With regard to the circumstances surrounding Gonzalez's decision, I agree with the majority that "Gonzalez entered the courtroom on the day of the

proceeding determined to plead guilty." Maj. at 8. There is no evidence that Cisneros had previously discussed the elements of the charged offense with Gonzalez, and Gonzalez claims he had only brief interactions with Cisneros prior to the rearraignment. At the proceeding, Gonzalez related to the court the basic outline of the story he would maintain throughout the entirety of the case—that the Zetas cartel threatened him and his family in order to force him to allow the cartel to load contraband into his trailer. Although he did not elaborate at the time, Gonzalez would later clarify that the cartel allegedly forced him to meet them near Brownsville, Texas, where they took his truck from him and loaded it at another location before returning it to him with the trailer door sealed.

The court declared a recess, and it is undisputed that during this break Cisneros advised Gonzalez regarding *both* duress and counsel's incorrect understanding that the government would have to prove that Gonzalez knew he was transporting specifically marihuana and specifically more than 1,000 kilograms thereof. Under the law as Cisneros incorrectly explained it, Gonzalez's account of events would have supported both an affirmative duress defense and a strong case for acquittal based on Gonzalez's not knowing the type or amount of drug he was transporting. In reality, Gonzalez's defense based on his lack of scienter was much weaker than Cisneros's statement indicated because the government had to prove only that Gonzalez knew he was transporting some type of illicit drugs—the kind of good the cartel's illegal business model was based on. But after Cisneros gave Gonzalez his incorrect explanation, Gonzalez decided that his case was strong enough to proceed to trial.

On this record, the clear implication is that Cisneros's erroneous advice gave Gonzalez a false conception of the strength of his case and influenced his

No. 17-40527

decision to forgo the plea agreement. The majority disagrees, positing that only the newly realized possibility of a duress defense caused Gonzalez to change course. But Cisneros advised Gonzalez of the legal bases of both defenses at approximately the same time, and there is no reason to believe one defense came as any less of a revelation than the other. The majority points to the fact that, prior to the recess, the court recited the correct elements of the offense and Gonzalez conceded that the government could prove everything it alleged. Maj. at 8. But if anything, this weighs in favor of the opposite conclusion; Gonzalez initially conceded that he could be convicted under the law as it actually stood, and it was only after his counsel falsely informed him that the legal standard was higher than the court had stated that he became convinced he had a sufficient chance of prevailing to risk going to trial. [1] The events of the rearraignment thus give no reason to doubt that Cisneros's incorrect advice influenced Gonzalez's decision to go to trial rather than accept the plea bargain.

Indeed, given the difficult standard for proving a duress defense that the court explained to Gonzalez, it is hard to believe Gonzalez would *not* have also considered the strength of the government's case against him. To prevail on duress, Gonzalez had to prove that the threat to his family was "unlawful," "present, imminent, and impending[, and] of such a nature as would induce a

---

[1] The majority seems to suggest it was unreasonable for Gonzalez to believe his counsel because the court and the government stated the law correctly before Cisneros gave him the incorrect advice. Maj. at 8 n.5 & n.6. But the district court warned Gonzalez during the same proceeding that Cisneros was "the man [he should] listen to, not [the court]" because the court did not "represent [him]." Moreover, whether it was objectively reasonable for Gonzalez to believe Cisneros's incorrect advice is not relevant; the question is whether the evidence indicates that Gonzalez subjectively relied upon his counsel's advice in forgoing the plea agreement, regardless of whether it was reasonable for him to do so. *See Lafler*, 566 U.S. at 163–64.

well-grounded fear of death or serious bodily injury"; that he "had not recklessly or negligently placed himself" in a situation where it was likely he would be forced to break the law; that he "had no reasonable legal alternative to violating the law"; and that it was reasonable to believe his criminal actions would prevent the threatened harm to his family. *United States v. Posada–Rios*, 158 F.3d 832, 873 (5th Cir. 1998). Gonzalez would have rationally been encouraged to go to trial by Cisneros's incorrect advice based on the assurance that he had a strong second defense available even if he could not meet all these requirements.[2]

The inference that arises from the events of the rearraignment—that Gonzalez considered and relied on Cisneros's mistaken advice in evaluating his case—is further corroborated by the fact that this two-defense approach is exactly the tactic Gonzalez used at trial. Calling attention to the alleged fact that Gonzalez did not know he was transporting over 1,000 kilograms of marihuana was a critical part of the defense strategy. Cisneros told the jury during his opening statement, "You will also hear evidence that my client didn't know whether [the load in the trailer] was cocaine, whether it was marihuana, whether it was illegals, or whether it was empty. He didn't know. For all he knows . . . he was being tested to see what he did." Later, Gonzalez testified that he had no idea what the cartel had loaded into his truck. On cross-examination, the state asked Gonzalez why he would think the cargo was something other than drugs. Gonzalez appeared to reply that, even if he suspected his cargo was drugs, he did not know "the kind of—the amount of"

---

[2] To the extent Cisneros misrepresented the difficulty of prevailing on a duress defense, this likely compounded the effect of his misstatements regarding the elements of the charged offense.

drugs it was.  This alone is powerful evidence that Gonzalez did not choose to go trial solely to raise a duress defense as the majority claims.

Lastly, the majority frames the district court's decision as centering on credibility determinations and the weighing of conflicting evidence.  Maj. at 9. It specifically cites Cisneros's testimony at the evidentiary hearing that Gonzalez wanted to go to trial so the jury could hear about the cartel's threats and the possibility of his duress defense, as well as Gonzalez's testimony that Cisneros told him acquittal might be possible "due to all the violence that was happening in Mexico."  Maj. at 7-8.  But neither Cisneros' nor Gonzalez's statements are inconsistent with Gonzalez's relying in part on Cisneros's mistaken advice.  Cisneros's testimony that Gonzalez wanted the jury to hear about the cartel's threats comports with Gonzalez's desire to pursue a lack of scienter defense because the threats provided the only plausible explanation of how he had come to transport a very large amount of marihuana without knowing the nature of his cargo.  Similarly, Cisneros's alleged statement regarding violence in Mexico weighs in favor of Gonzalez pursuing both defenses—the jury's familiarity with cartel violence would potentially lend credence to Gonzalez's entire narrative, and not simply those portions relevant to a duress defense. There is thus no evidence weighing against the conclusion that Cisneros's incorrect advice influenced Gonzalez to turn down the plea agreement, which is inferable from the circumstances and corroborated by the strategy Gonzalez pursued at trial.

***

The standard for proving prejudice in this context is not high.  Gonzalez needed to show only that there is a "reasonable probability" he would have accepted the plea offer if his counsel had correctly informed him that his second defense was significantly weaker than he was led to believe.  *See Lafler*, 566

U.S. at 163–64. A reasonable probability is less than proof by a preponderance of the evidence; it is only "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The record in this case is sufficient to undermine confidence that Gonzalez would have proceeded to trial if he had been correctly advised, and I would therefore hold that Gonzalez has carried his burden.