Michael John YOWELL,
Petitioner–Appellee,

v.

Rick THALER, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Respondent–Appellant.

No. 10–70026.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 2011.

Donald Vernay, Rio Rancho, NM, Richard L. Wardroup, Esq., Law Office of Richard L. Wardroup, Lubbock, TX, for Petitioner–Appellee.

Katherine Diane Hayes, Assistant Attorney General, Office of the Attorney General, Austin, TX, for Respondent–Appellant.

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge: *

The state appeals a judgment granting habeas corpus relief to Michael Yowell un-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be

der 28 U.S.C. § 2254. Because the district court did not sufficiently defer to the state habeas court's findings, we reverse and remand.

## I.

In 1998, Yowell shot and killed his father, strangled his mother, and opened a natural gas line in the kitchen. When his grandmother, who was living in his parents' house at the time, opened her bedroom door, it caused the gas to combust, fatally injuring his grandmother and charring the remains of his parents. Two days later, Yowell confessed to shooting his father, who had caught Yowell trying to steal his wallet to buy drugs, and to struggling with his mother before bludgeoning her and strangling her to death. Yowell said that afterwards, in a panic, he ran to the kitchen and opened a gas jet.

## II.

Yowell was charged with capital murder. At trial, his attorney argued that he was "legally insane" at the time of the offense and unaware that his conduct was wrong. The lawyer relied on Yowell's extensive medical record that documented, in over 800 pages spanning many years, Yowell's ongoing mental illness, psychiatric problems, drug and chemical dependency, self-medication, suicidal and homicidal ideation, and criminal activity. Philip Davis, a psychologist, testified for the defense for approximately two hours about Yowell's mental health records. He read entries from the records describing that, *inter alia,*

- Yowell was a patient at Lubbock Regional Mental Health Mental Retardation Center as early as 1988 when he sought treatment for drug addiction;

- he was neglected as a child and had violent thoughts;

- he attempted suicide in 1991;

- he was diagnosed with borderline personality disorder, bipolar disorder, antisocial personality disorder, and schizoid and sadistic personality disorder traits;

- he was diagnosed as suicidal and with polysubstance dependence based on his using cocaine, methamphetamine, acid, LSD, marihuana, beer, liquor, and prescription Darvon, Demerol, and Dysoxin;

- by 1992, he was hospitalized at Big Spring State Hospital, where he experienced long periods of depression, brief periods of manic bizarre behavior, and some delusional thinking;

- beginning in 1993, doctors diagnosed him with antisocial personality disorder;

- he had serious thoughts of committing homicide and tried to collect money by beating someone with a bat;

- he reported having blackouts, daydreaming about abusing his then one-year-old and three-year-old daughters, and fantasizing about sexually molesting children and committing mass murder;

- he had two years of sobriety from 1994 to 1996, but the suicidal thoughts and mental health problems returned;

- he reported having racing thoughts, extreme anger, potential for violence, and hearing voices telling him to hurt others; and

- he was hospitalized in 1997 and 1998 for polysubstance abuse, drug-induced psychosis, and bipolar disorder.

published and is not precedent except under the limited circumstances set forth in 5TH CIR.

R. 47.5.4.

Although Davis testified at length regarding what was in Yowell's records, he was not allowed to give his own opinions or interpretations, because he had not personally examined Yowell, nor had he been designated as such a witness by Yowell.[1] At the conclusion of Davis's testimony, the defense rested.

The jury found Yowell guilty of capital murder, then the trial moved to the punishment phase.[2] Before beginning its case, the defense informed the court that "we're going to rest. We're not going to call anybody." Outside the jury's presence, Yowell's attorney stated that he needed to "put something on the record," and informed the court that

> [d]uring the recess, while the Court was revising the Court's Charge, I had a consultation with my client. And he has instructed me, Your Honor, not to argue the case. I intend to go ahead and do it. But I wanted to make sure that he had an opportunity to tell the Court that.

Following that representation, the court admonished Yowell that he should follow his attorney's advice. Yowell replied,

> Judge, sir, the way they are going about it is the way that—it's not to argue my case. I don't want the argument in the context of the way that they want to argue it, which is playing [my recorded confession].... I see no point in going over something that's, to me, in my own words, as brutal as what went on. Having those people hear that again is not going to help me in any way.

The court told Yowell it would take a brief recess for Yowell to confer with his attorneys.

After the recess, but before Yowell returned to the courtroom, the defense informed the court:

> I don't know if this needs to be on the record since [Yowell is] not here. He has told me—or us, in no uncertain terms, that he doesn't want us to take any action that would result in the possibility of a life sentence. He wants a death sentence.

The attorney further stated that he planned to "go ahead, and argue the case, whether [Yowell] wants me to or not. I don't think I have much choice." The court agreed.

The defense proceeded to play the hour-long tape recording of Yowell's confession for the jury, then argued as follows:

> It was necessary that I play the entire tape for you so that people won't think we were taking things out of context. And it's taken my entire time. But I thought it was important to show each of you that I think there is some genuine remorse on the behalf of [Yowell] in this case. Between that evidence, the evidence of the medical records and the background, I think, I think that that's sufficient cause to step back, to take that one step back from the death penalty. Forty years is plenty. Forty years maximum. And I'm asking you to step back.

The jury sentenced Yowell to death.

After exhausting his direct appeals, Yowell applied for a state writ of habeas

---

1. That was a strategic decision. One of Yowell's attorneys stated to the trial court, "Based on my experience in the past, there's probably no way on God's green earth that we're going to do anything to allow the State to examine our client with one of their own experts. If that's an indication of what our intent is, then so be it."

2. In Texas, capital murder cases are tried under a bifurcated model separating the guilt/innocence phase from the punishment phase. Tex. Code Crim. Proc. Ann. art. 37.071 § 2(a)(1) (Vernon 2006).

corpus raising ten claims, one of which was ineffective assistance of counsel regarding the punishment phase. He alleged that his counsel "ineffectively failed to investigate and present compelling mitigation evidence at the punishment stage in an effort to convince the jury to impose a life sentence rather than a death sentence." He denied that he had ever told his attorneys to accept the death penalty and argued that they should have pursued and presented "more compelling" evidence in the medical health records and from other sources, such as the testimony of friends and family.

Yowell supported the claim with affidavits from a defense investigator and nine witnesses. Yowell said that his attorneys should have elicited evidence from those individuals that, *inter alia*, his father was a workaholic and an alcoholic gambler who abused his children and his wife; that Yowell loved his mother; that he was a drug abuser; and that his older brother was domineering, physically abusive, and perhaps sexually-abusive. Yowell also alleged that the jury did not understand the mitigating effect of the mental health records, because Davis was not allowed to interpret them.

The state habeas trial court conducted an evidentiary hearing and considered all the evidence. It determined that, under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Yowell had failed to show both that his counsel's performance was objectively deficient and that, even if it was deficient, it prejudiced his defense. The state court found that his attorneys' investigation was "reasonable and thorough" and that the defense had presented a sympathetic picture of Yowell's background during the guilt/innocence stage through the medical records. The court also found that counsel "were instructed by [Yowell] not to take any action that would result in the possibility of a life sentence as [Yowell] wanted a death sentence."

The court concluded that the attorneys had "performed competently and provided constitutionally effective assistance" and that Yowell had failed to prove sufficient prejudice:

[Yowell] contends that trial counsel should have elicited potential mitigating evidence.... [However Yowell's] attorneys did investigate and put on evidence concerning [Yowell's] background. Trial counsel established [Yowell]'s abused childhood and drug usage through the introduction of voluminous records—more than [800] pages. In addition, these records were highlighted to the jury for approximately two hours in live testimony. This evidence addressed [Yowell]'s home environment and drug usage in voluminous detail. Additionally, the evidence addressed most, if not all, of [Yowell]'s contentions concerning his home life. Consequently, [Yowell] is unable to show that, if the newly proffered mitigation evidence had been presented, that there is a reasonable probability the result of the sentencing phase would have been different.

Moreover, after reviewing the complained-of additional mitigation evidence presented in the Application for Writ of Habeas Corpus, testimony at the writ hearing, and supporting affidavits, this Court concludes that the additional mitigation evidence is not significant due to the similarity to evidence introduced at trial. After evaluating the totality of the available mitigation evidence—both that adduced at trial and the evidence adduced in the habeas proceeding—this Court finds that [Yowell] is unable to show [that], if the newly proffered evidence had been presented and explained, ... there is a reasonable proba-

bility that the result of the sentencing phase would have been different.

Yowell appealed to the Texas Court of Criminal Appeals, which affirmed the trial court's denial of relief and adopted it's findings of fact and conclusions of law.

Having exhausted his state remedies, Yowell filed a federal habeas petition, raising many of the same arguments as in his state habeas proceedings, including ineffective assistance. The district court granted habeas relief on several grounds, pretermitted two issues, and granted habeas relief for ineffective assistance. The court determined that although

> the state court correctly compared the mitigation evidence presented at the habeas hearing with the mitigation evidence presented at the actual punishment stage of trial but failed to note that ... defense counsel rested without presenting any evidence during the punishment phase of trial; indeed, he did not even re-offer any of the evidence presented during the guilt/innocence phase, not the 850 pages of medical records or the testimony of Dr. Davis. Moreover, defense counsel, over his client's vocal objections, used his entire time for closing argument at punishment to replay the audio recording of Yowell's statement and confession to law enforcement. Thus, the state court erroneously concluded that "the complained of additional mitigation evidence [ . . . ] is not significant *due to the similarity to evidence introduced at trial* " because defense counsel introduced *no* evidence at the punishment phase.

The federal district court agreed with the state habeas court that "defense counsel presented a sympathetic picture of [Yowell's] background to the jury during trial," but "[u]nfortunately, none of this evidence was presented to the jury during the punishment phase of trial." The court concluded that the mitigating evidence might have influenced the jury, so Yowell suffered prejudice. The court summarily discounted the attorneys' arguments that their decision not to re-offer the trial evidence was a strategic decision, and the court thus determined that Yowell had received ineffective assistance. In a footnote, it ignored the state trial court's finding that the attorneys "were instructed by [Yowell] not to take any action that would result in the possibility of a life sentence as [Yowell] wanted a death sentence," and it decided that Yowell had made no such statement.

### III.

In appeals of habeas relief for ineffective assistance of counsel, we review the district court's findings of fact for clear error but decide issues of law *de novo*. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir.2009). A finding of fact is clearly erroneous "when, although there is enough evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed." *Myers v. Johnson*, 76 F.3d 1330, 1333 (5th Cir.1996). We must also consider the heightened standard of review imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA)", which states in 28 U.S.C. § 2254(d) that

> a federal court may not grant habeas relief after an adjudication on the merits in a state court proceeding unless the adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Richards,* 566 F.3d at 561 (quoting § 2254(d)).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant the writ only "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts" of the petitioner's case. *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). AEDPA provides that state court factual findings are presumptively correct and that the petitioner carries the burden of rebutting that presumption by clear and convincing evidence. § 2254(e)(1).

The district court failed to give sufficient AEDPA deference to the state court's factual finding that Yowell's proffered mitigation evidence was cumulative. The state court conducted a lengthy evidentiary hearing on the matter and determined that, as we described above, even if the additional evidence had been introduced during the punishment phase, it was not significant in light of its similarity to the other evidence the defense had already presented during the guilt/innocence phase.

 In Texas, "[t]here is no requirement that evidence admitted at guilt/innocence be re-offered to be considered at punishment." *Buchanan v. State,* 911 S.W.2d 11, 13 (Tex.Crim.App.1995) (citing *Ex parte Kunkle,* 852 S.W.2d 499, 502 (Tex.Crim.App.1993)). In *Buchanan,* the defendant argued that he should not have had to present evidence during punishment that, for a charge of aggravated kidnaping, he released the victim alive and in a safe place, where he had already presented that evidence during the guilt/innocence stage. *Id.* The state district court "concluded that the evidence to raise the

issue of safe release must be presented at punishment because it would be unreasonable to expect our [triers of fact] to recall minute details from the guilt phase of trial." *Id.* at 14 (internal quotation marks omitted). The Texas Court of Criminal Appeals disagreed, saying that it is reasonable "to expect or require the trier of fact, whether the jury or the trial court, to consider the evidence admitted at guilt/innocence when assessing the punishment." *Id.*

The district court here did not give enough weight to that facet of Texas law. Had it done so, it would not have determined that the state court "erroneously concluded that 'the complained of additional mitigation evidence [ . . . ] is not significant *due to the similarity to evidence introduced at trial'* because defense counsel introduced *no* evidence at the punishment phase" or that "[u]nfortunately, none of this [mitigating] evidence was presented to the jury during the punishment phase of trial." Because the defense introduced mitigating evidence during trial, we must assume, as the state habeas court did, that the jury considered it during the punishment phase, especially in light of the fact that Yowell's attorney referred to the medical records during his closing statement. Thus, Yowell has failed to show by clear and convincing evidence that the state habeas court's factual findings were incorrect, and the district court clearly erred in determining that the state court unreasonably applied *Washington,* 466 U.S. at 691–92, 104 S.Ct. 2052, to the facts.

We defer to the state habeas court's determination that Yowell has failed to show the necessary prejudice under *Washington,* and we reverse the habeas relief on Yowell's claim of ineffective assistance. Because the district court pretermitted its

consideration of two other grounds[3] for relief, we REVERSE and REMAND for the court to address only those pretermitted issues.

---

**3.** Namely grounds 2 and 6(a) as set forth in the district court's opinion.