# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 1, 2013

No. 11-40696

Lyle W. Cayce
Clerk

RAY CHARLES MILLER,

Petitioner– Appellant,

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, DAVIS, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Ray Charles Miller ("Miller") appeals the district court's denial of his 28 U.S.C. § 2554 application challenging his guilty-plea conviction for intoxicated manslaughter with a vehicle. We granted a certificate of appealability ("COA") on three issues: (1) whether Miller's trial counsel provided ineffective assistance regarding a lapsed plea offer from the State; (2) whether the trial court violated Miller's right to self-representation by denying his request to proceed *pro se*; and (3) whether Miller's trial counsel provided ineffective assistance because he refused to move to withdraw or had a conflict of interest. We AFFIRM.

No. 11-40696

I.

In March 2007, a Texas grand jury indicted Miller for intoxicated manslaughter with a vehicle.[1]  On the day before jury selection for Miller's trial, the State offered Miller a plea bargain with a recommended sentence of 16 years of imprisonment.  Miller's trial counsel, Scott E. Scammahorn ("Scammahorn"), described his communications with Miller regarding the 16-year offer:

> During that consultation with Mr. Miller, I communicated to Mr. Miller the final offer from the District Attorney's office, which was 16 years.  I informed Mr. Miller that the ADA was awaiting our answer as they had numerous witnesses preparing to travel to Tyler for the trial and that if he rejected this offer, it would either be withdrawn or increase in prison time.  I further communicated to Mr. Miller that he had cocaine in his system and that the expert I retained to review the evidence could not be called as a witness as he would not testify favorably.  I further informed Mr. Miller that he was facing 25 years to life in prison due to prior convictions and that an offer of 16 years for Intoxicated Manslaughter is exceptional given the circumstances. Mr. Miller was adamant that he would NOT take the 16 years and that something told him "the number is 12" and that he would not take anything more than 12.  I urged Mr. Miller to reconsider and stated that this was the best deal he would be offered.  Mr. Miller became agitated and again REJECTED the 16 year offer, stating that he would never take that deal.  He instructed me to go to the District Attorney's office with the 12 year counter offer, which I did.  The ADA said no and they would be ready for trial.
>
> Just prior to our pretrial hearing the following day, I spoke with Mr. Miller and he again stated he would not accept the 16 year offer.  I requested and was granted the opportunity to place Mr. Miller on the record rejecting said offer.  A few minutes later

---

[1] We base our summary of the facts on the state-court record, in accordance with the Supreme Court's decision in *Cullen v. Pinholster*.  131 S. Ct. 1388, 1398 (2011) (holding that federal habeas review under § 2554(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits").

> however, Mr. Miller decided to take the offer. I asked the ADA if the offer remained open and was advised that said offer had been withdrawn.

Miller tells a different story. According to Miller, Scammahorn failed to relay the prosecutor's response to the counteroffer in a timely manner, and this delay effectively denied him the opportunity to accept the 16-year offer. There is some record support for Miller's version of events. At the pretrial hearing, Miller stated: "I asked Mr. Scammahorn to go back and see if he could get it a little lower, but get back with me that same day, so I could make a decision on it. I was willing to make a decision on [the prosecutor's] offer that day, but there was a misunderstanding between me and Mr. Scammahorn." Scammahorn explained that the miscommunication "could have been partially [his] fault." He told the court that Miller "did say go back to [the prosecutor], which I did, knowing the answer, and I didn't get back to him, because I knew the answer. But I didn't—I communicated to his wife and maybe that's where the miscommunication took place."

Considering this purported miscommunication and other issues between Miller and Scammahorn, Miller sought to proceed *pro se*. In a lengthy exchange, the trial court questioned Miller about his experience with the law and explained the dangers of self-representation. Although Miller remained steadfast in his request to proceed *pro se*, the court decided not to allow it, stating: "I don't believe you're qualified to represent yourself. I don't have a motion from Mr. Scammahorn to allow him to withdraw. But under the present state of the record, he is still your retained attorney, and that's the way the Court is going to leave it." The trial court explained that Miller could not use a last-minute request for self-representation to "manipulate the orderly administration of justice," adding "based on your answers to my questions and the fact that you've got retained counsel standing here, I'm simply not in a position to let you represent yourself."

3

The parties reached a plea agreement the following day, after jury selection was complete. The State agreed to recommend a sentence of 35 years of imprisonment in Miller's intoxicated manslaughter case and to dismiss a separate indictment against Miller for felony theft. In return, Miller agreed to plead guilty and to waive certain rights, including the right to appeal. Miller also pleaded true to having two prior state felony convictions, which exposed him to a statutory imprisonment range of 25 years to life as a habitual offender. Tex. Penal Code § 12.42 (d). Pursuant to the plea agreement, Miller signed several written documents, including an Acknowledgment of Admonishments, as well as a Waiver of Trial by Jury and Waiver of Confrontation and Agreement to Stipulate.

Miller appealed his case to the state court of appeals, which dismissed his appeal based on the express appeal waiver contained in Miller's guilty plea agreement. *Miller v. State*, No. 12-08-00053-CR, 2009 WL 531528, at *1 (Tex. App.—Tyler 2009, pet. ref'd). The Texas Court of Criminal Appeals ("TCCA") refused a petition for discretionary review. *Id.*

Miller then filed a state habeas application claiming, *inter alia*, that his trial counsel provided ineffective assistance by failing to keep him informed of the status of the 16-year plea offer before it lapsed, and that the trial court and his trial counsel violated his right to self-representation. In its Findings of Fact and Suggested Conclusions, the state habeas court took judicial notice of all prior proceedings and entered findings of fact and conclusions of law, including:

- [Miller] entered his pleas of his own free will.

- There was no credible evidence before the Court that the defendant's counsel provided ineffective assistance of counsel. The contrary is in fact indicated by the record where it shows that counsel continued to successfully advocate for the defendant without any objection from the defendant.

- Nothing in the record of this case indicates that the defendant had a direct conflict of interest with his trial

4

> counsel, or that counsel failed to convey any plea offers from the State.
>
> - The Court did not err in refusing to allow the defendant to proceed *pro se* where no motion to withdraw was filed by the defendant's trial attorney.

A state appeals court affirmed, and the Texas Court of Criminal Appeals denied Miller's application without written order.

In his instant § 2554 application, Miller asserted the same claims raised in his state habeas application. The magistrate judge recommended denial of Miller's § 2554 application on the merits and the denial of a COA on the grounds that: (1) Miller waived his claims by pleading guilty, and (2) the claims failed on the merits. Over Miller's objections, the district court adopted the magistrate judge's report and recommendation, denied his § 2554 application, and denied a COA. Miller timely appealed the district court's judgment, and sought and obtained a COA on the three issues stated above.

II.

In reviewing a district court's decision on a § 2554 application, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *Harrison v. Quarterman*, 496 F.3d 419, 423 (5th Cir. 2007). We must also consider the deferential standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which the district court applied in evaluating Miller's § 2254 claims. *See id.* Pursuant to AEDPA, we cannot grant federal habeas relief on claims adjudicated on the merits in state court unless the adjudication resulted in a decision that: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). Moreover, we presume the state court's factual findings to be correct unless the applicant rebuts the presumption by clear and convincing evidence. § 2254(e)(1).

Section 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 131 S. Ct. at 1398 (internal quotation marks and citation omitted). To satisfy the standards of § 2254(d), a state prisoner must show that the state court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

Having described the contours of AEDPA's highly deferential framework, we now turn to the three claims certified for appeal.[2]

A.

First, Miller claims that his trial counsel provided ineffective assistance in allowing the State's plea bargain offer to lapse.[3] To prevail on a claim of ineffective assistance of counsel, the defendant must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, Miller "must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. In evaluating deficiency, we apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A failure to

---

[2] The parties dispute whether Miller's guilty plea waived these challenges. Because we agree with the state habeas court and the district court that Miller's claims fail on the merits, we need not address the guilty-plea waiver issue, which is complicated by *Missouri v. Frye*, 132 S. Ct. 1399 (2012) and *United States v. Sanchez Guerrero*, 546 F.3d 328, 322 (5th Cir. 2008).

[3] Miller argues that the state habeas court misconstrued his ineffective-assistance-of-counsel claim, such that *de novo* review is appropriate. *See Henderson v. Cockrell*, 333 F.3d 592, 600–01 (5th Cir.2003) (holding that a misconstrued claim was not "adjudicated on the merits" for the purposes of AEDPA and, as a result, applying *de novo* review). Having reviewed Miller's pleadings and the state habeas court's decision, we disagree. While the state habeas court may not have described Miller's claim in precisely the manner he preferred, it addressed the substantive legal issues he presented. Therefore, we apply AEDPA deference to Miller's claims.

establish either deficient performance or prejudice defeats the ineffective-assistance-of-counsel claim. *Id.*

In the context of an ineffective-assistance-of-counsel claim subject to AEDPA deference, "the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 131 S. Ct. at 785. While "[s]urmounting *Strickland's* high bar is never an easy task," "establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 788 (citations omitted). "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. Put simply, both the *Strickland* standard and the AEDPA standard are "highly deferential" and "when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted).

Here, Miller asserts that Scammahorn's communication failure regarding the 16-year plea offer constituted ineffective assistance of counsel. Specifically, Miller claims that Scammahorn never relayed the State's response to his 12-year counteroffer, and that he would have accepted the State's initial 16-year plea offer had he known that it was final. This claim implicates the Supreme Court's recent decision in *Missouri v. Frye*, which held that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations. 132 S. Ct. 1399, 1408 (2012). In *Frye*, the court noted the general rule that defense counsel has a duty to communicate formal offers from the prosecution where the relevant terms and conditions may result in a lesser sentence, a conviction on lesser charges, or both. *Id.* We have previously held, and now reiterate, that *Frye* did not announce a new rule of constitutional law because it "merely applied the Sixth Amendment right to counsel to a specific factual context." *In re King*, 697 F.3d 1189, 1189 (5th Cir. 2012). Therefore, we may consider *Frye* when

determining whether the state habeas court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." § 2254(d)(1).

The facts of this case, however, are readily distinguishable from *Frye.* Here, the state habeas court expressly found that "[n]othing in the record . . . indicate[d] that counsel failed to convey any plea offers from the State." *Compare Frye*, 132 S. Ct. at 1410 ("On this record, it is evident that Frye's attorney did not make a meaningful attempt to inform the defendant of a written plea offer before the offer expired."). In reaching its conclusion, the state habeas court credited Scammahorn's affidavit, which indicated that he informed Miller of the State's 16-year offer and counteroffered with 12 years, as Miller instructed him to do. Scammahorn further stated that he met with Miller *after* the State rejected Miller's counteroffer, at which time Miller again said that he would not accept the State's initial 16-year offer. Miller has not, by clear and convincing evidence, rebutted the presumption of correctness owed to the state habeas court's factual determination. *See Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (affirming that pursuant to AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct," and that presumption must be rebutted by "clear and convincing evidence" (quoting 28 U.S.C. § 2254(e)(1)); *see also Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009) (affirming that "the state habeas court's factual determinations, including its credibility findings, are entitled to a presumption of correctness"). Thus, Miller's claim cannot survive under *Strickland* and AEDPA's combined, "doubly" deferential review. *Richter*, 131 S. Ct. at 786.[4]

---

[4] Given that we resolve Miller's ineffective-assistance-of-counsel claim involving the lapsed 16-year plea offer from the State on *Strickland*'s deficiency prong, we need not address the issue of prejudice. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984) ("[I]n addressing [an ineffective-assistance] claim, we need not . . . address both stages of the inquiry if an insufficient showing is made as to one.").

B.

Second, Miller claims that the trial court violated his right to self-representation when it denied his request to proceed *pro se* at trial. A criminal defendant has a constitutional right to self-representation at trial when he knowingly and intelligently waives the right to counsel. *Faretta v. California*, 422 U.S. 806, 807, 835 (1975). The defendant's waiver of his right to counsel must be unequivocal, and it should not be inferred by the court in the absence of a clear and knowing election. *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) (en banc). Before accepting a waiver of counsel, the court must consider and weigh:

> the defendant's age and education . . . and other background, experience, and conduct. . . . The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant . . . and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.

*McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir. 1985).

The state habeas noted that it "conducted a serious and extensive inquiry into the defendant's claim of a conflict of interest and his desire to proceed *pro se*." It also made three factual determinations involving Miller's self-representation claim: (1) that Scammahorn continued to advocate successfully for Miller during the course of the proceedings without objection from Miller, even after the trial court denied Miller's motion to proceed *pro se*;[5] (2) that "[t]he

---

[5] The trial court considered Miller's request to proceed *pro se* untimely, as Miller did not raise it until only a few hours before jury selection. The state habeas court apparently agreed when it made this determination. The Supreme Court has recognized that the right to self-representation "is not absolute" under *Faretta*, and that "most courts require [the defendant] to [invoke the right] in a timely manner." *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 161–62 (2000); *see also id.* at 162 ("Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."). This determination also supports the state court's denial of habeas relief on this claim. *See* § 2254(d).

record indicates that the defendant was equivocal in his intent to fire his retained trial counsel where he asked counsel to continue to negotiate a plea agreement for him even after allegedly terminating his services"; and (3) that "[t]he Court did not err in refusing the allow the defendant to proceed *pro se* where no motion to withdraw was filed by the defendant's trial attorney."

Pursuant to AEDPA, these determinations of the state habeas court—which stress that Scammahorn successfully advocated for Miller during the course of his proceedings—are entitled to deference. *See Batchelor*, 682 F.3d at 405; *Richards*, 566 F.3d at 563. Miller has failed to demonstrate that the state habeas court's decision was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). Accordingly, Miller is not entitled to habeas relief on his self-representation claim.

## C.

Third, Miller claims that Scammahorn provided ineffective assistance regarding his right to self-representation on two grounds. First, Miller argues that Scammahorn refused to withdraw from the case after he expressed a clear and unequivocal wish to proceed *pro se*.[6] Second, he contends that Scammahorn had a conflict of interest, and therefore, abdicated his duty of loyalty to Miller

---

[6] Miller sought to proceed *pro se* at two stages of the proceedings. First, he requested that Scammahorn withdraw about two weeks before the pretrial hearing. But this request was equivocal, because Miller contemporaneously requested for Scammahorn to obtain a more favorable plea agreement from the State. For that reason, it fails. *Brown*, 665 F.2d at 610. Second, Miller sought to proceed *pro se* at the pretrial hearing. Any ineffective assistance claim arising out of this time period fails because the record shows that any motion that Scammahorn would have filed to withdraw from the case would have been futile. The state trial court stated explicitly that it "wouldn't grant a motion by Mr. Scammahorn to withdraw." We "ha[ve] made clear that counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)). Based on these facts, Miller cannot show that Scammahorn assistance was deficient, especially pursuant to *Strickland* and AEDPA's "doubly" deferential review. *Richter*, 131 S. Ct. at 786.

by refusing to withdraw from the case.

These challenges fail for the same reasons involving Miller's self-representation claim articulated above.  Specifically, the state habeas court determined that Scammahorn advocated successfully for Miller throughout the proceedings and that Miller equivocated in his request to proceed *pro se*.[7]  This factual determination of the state habeas court is entitled to deference pursuant to AEDPA.  *See Batchelor*, 682 F.3d at 405; *Richards*, 566 F.3d at 563.  Because it is reasonable, we agree with the district court that Miller is not entitled to habeas relief on this claim.

## III.

For the foregoing reasons, we AFFIRM the district court's denial of Miller's habeas petition.

---

[7] We further reject this claim based on the state habeas court's determination that "[n]othing in the record indicates that the defendant had a conflict of interest with his trial counsel . . . ."  Determinations of whether an actual conflict existed and whether the conflict had an adverse effect are mixed questions of law and fact.  *United States v. Infante*, 404 F.3d 376 (5th Cir. 2005).  Given the lack of evidence in the state court record showing an actual conflict of interest, we conclude that the state habeas court's decision is entitled to deference under AEDPA.  *See Batchelor*, 682 F.3d at 405; *Richards*, 566 F.3d at 563.