# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 12-70008

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2017

Lyle W. Cayce
Clerk

TODD WESSINGER,

Petitioner - Appellant

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:04-CV-637

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Louisiana death row inmate Todd Wessinger seeks certificates of appealability to appeal the district court's denial of his claims of ineffective assistance of trial counsel during voir dire, ineffective assistance of trial counsel at the guilt phase, and suppression of material evidence in violation of *Brady v. Maryland*. Because Wessinger has failed to make the requisite

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-70008

showing under *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), we DENY Wessinger's motion for COAs as to all of these claims.

I

Todd Kelvin Wessinger was charged with two counts of first degree murder in the November 19, 1995, shooting deaths of Stephanie Guzzardo and David Breakwell. During a two-day jury trial, the State sought to establish the following occurrences. On the morning of November 19, Wessinger rode his bicycle to Calendar's Restaurant in Baton Rouge, where he used to work. Mike Armentor, a bartender at Calendar's, saw Wessinger just outside of the restaurant, and the two exchanged greetings. Wessinger then entered the restaurant through a rear door and shot Armentor twice in the back with a .380 semi-automatic pistol. He then tried to shoot Alvin Ricks, a dishwasher, but the gun would not fire. Ricks ran out of the restaurant and across the street to call 911, passing Willie Grigsby, another employee of the restaurant, who escaped the restaurant without being seen. Stephanie Guzzardo, the manager on duty that morning, heard the commotion from the restaurant's office and called 911. Before she could speak to the operator, Wessinger entered the office; after a short exchange during which Stephanie begged for her life, Wessinger shot her through the heart. Wessinger then removed approximately $7000 from the office. He next found David Breakwell, a cook who had been hiding in the restaurant's cooler, and shot him as he begged for his life. He left the restaurant on his bicycle, leaving Guzzardo dead; Breakwell died en route to the hospital. Armentor survived.

Armentor and Ricks both testified at trial, as did four after-the-fact witnesses. Both Armentor, who did not know Wessinger, and Ricks, who did, testified that Wessinger robbed Calendar's and shot Guzzardo and Breakwell. Another trial witness testified that Wessinger had asked one of his friends to commit the robbery with him. Multiple witnesses testified that Wessinger

2

No. 12-70008

confessed to the commission of the crime, and several people testified that they had seen Wessinger with large sums of money after the crime. The murder weapon was subsequently discovered, along with a pair of gloves worn during the crime, at an abandoned house across the street from Wessinger's residence. One of Wessinger's friends testified that Wessinger had asked him to remove the murder weapon from the abandoned house.

The jury found Wessinger guilty on both counts and sentenced him to death. On direct appeal, Wessinger argued eighteen separate assignments of error. On May 28, 1999, the Louisiana Supreme Court affirmed the conviction and sentence. Wessinger was appointed pro bono post-conviction counsel, who eventually filed a state habeas petition raising claims of, inter alia, ineffective assistance of trial counsel (IAC) and suppression of material evidence. The state trial court dismissed all claims on the merits. The Louisiana Supreme Court affirmed the state trial court's denial of relief without reasons in September 2004. Wessinger filed an application for a writ of habeas corpus in the United States District Court for the Middle District of Louisiana later that same month, asserting claims of IAC in voir dire, at the guilt phase, and at the penalty phase, and a *Brady* claim. The district court denied all claims. He now seeks certificates of appealability to appeal the denial of his voir dire IAC, guilty-phase IAC, and *Brady* claims.[1]

II

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standards to the state court's decision as did the district court." *Lewis v. Thaler*, 701 F.3d

---

[1] Wessinger moved pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment as to his claim of penalty-phase IAC. The district court granted his motion and ultimately granted habeas relief. In Wessinger v. Vannoy, No. 15-70027, the panel majority reversed the district court's grant of habeas relief.

No. 12-70008

783, 787 (5th Cir. 2012) (quoting *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004)).   Review of claims that the state court adjudicated on the merits is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified in relevant part at 28 U.S.C. § 2254(d). *See Miller v. Thaler*, 714 F.3d 897, 901 (5th Cir. 2013); *Druery v. Thaler*, 647 F.3d 535, 538 (5th Cir. 2011).   Under § 2254(d), a state prisoner's

> application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lewis*, 701 F.3d at 788.   "We review pure questions of law under the 'contrary to' standard of sub-section (d)(1), mixed questions of law and fact under the 'unreasonable application' standard of sub-section (d)(1), and pure questions of fact under the 'unreasonable determination of facts' standard of sub-section (d)(2)." *Simmons v. Epps*, 654 F.3d 526, 534 (5th Cir. 2011) (quoting *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000)).

III

A COA may be granted only if Wessinger has "made a substantial showing of the denial of a constitutional right" by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims" or that the issues presented "are adequate to deserve encouragement to proceed further."   *See Miller-El*, 537 U.S. at 327; *see also* 28 U.S.C. § 2253(c)(2).   For the following reasons, we find that Wessinger has failed to make the required showing and DENY COAs as to all of his claims.

No. 12-70008

A. *Ineffective Assistance of Trial Counsel at Voir Dire*

Wessinger seeks a COA to appeal the district court's denial of his IAC claim relating to trial counsel's alleged failures during voir dire. A petitioner seeking to establish that his Sixth Amendment right to effective counsel was violated must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The state court denied Wessinger's IAC claim relating to voir dire on the merits; thus, the "doubly" deferential AEDPA-*Strickland* standard applies. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Under this standard, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Wessinger argues that counsel was ineffective in failing to strike for cause or use a peremptory strike on a juror who stated that she would vote for the death penalty "automatically" upon a verdict of guilty. We agree with the district court that there is an eminently reasonable argument that counsel's conduct in this case did not fall below an objective standard of reasonableness.

The voir dire transcript indicates that the juror in question gave inconsistent responses with respect to her ability to sentence a defendant to death. Initially, the juror said she thought she could return a verdict of death, but when pressed, she said, "Well, I think it's hard to be the one to say to put this person, you know, to die." She then continued, "But then again, if all the evidence proves that he's definitely guilty I just feel like the system today so many people are sent for a life sentence and they eventually get off on parole or come up for parole and then they get out or something." She concluded, "I just feel like if they're there and it's been proven that they're guilty and that they did do the crime then they should be put to death." Later, defense counsel returned to that juror and pressed her on her previous answer:

[Y]ou indicated that you have a problem with people getting out on parole. . . . But in this case, . . . if it's a recommendation of life [the judge] will sentence the defendant to life imprisonment and he'll further say without the benefit of probation, parole or suspension.

The juror responded that she understood. In light of this colloquy, a reasonable attorney could easily believe that, after clearing up her misunderstanding of the law regarding parole, this juror would actually be reluctant to impose the death penalty. In view of the highly deferential standard of review, reasonable jurists would not find the district court's dismissal of this claim debatable.

*B. Ineffective Assistance of Trial Counsel at the Guilt Phase*

Wessinger seeks a COA to appeal the district court's denial of his IAC claim relating to trial counsel's alleged failures at the guilt phase. Specifically, he argues that counsel was ineffective in failing to interview and prepare to cross-examine eyewitnesses to the crime and after-the-fact witnesses and in failing to highlight to the jury, at any point during the guilt phase of the trial, the lack of physical evidence linking Wessinger to the crime.[2] The state court denied Wessinger's claims alleging IAC at the guilt phase on the merits; we must therefore analyze them under a doubly-deferential standard of review. *Richter*, 562 U.S. at 105.

Wessinger first argues that counsel's failure to interview or effectively cross examine the State's witnesses rendered his performance constitutionally deficient. With respect to eyewitness Eric Armentor, he argues that counsel was deficient in failing to recognize and inform the jury of the inconsistencies in Armentor's accounts of the shooting given that day, three days later, and at trial, and in failing to note that Armentor's identification of the shooter

---

[2] Wessinger also asserts that counsel was ineffective in failing to engage in adequate pretrial motions practice and in failing to object to several "inappropriate" jury instructions. However, he makes no argument to establish that counsel's performance was deficient or to demonstrate that he was prejudiced by counsel's failures. Therefore, these arguments are forfeited. FED. R. APP. P. 28(a)(8).

occurred three days after the shooting, after photos of Wessinger had been published in local newspapers. He argues that this deficiency was prejudicial because, "[h]ad counsel interviewed Armentor and obtained copies of Armentor's previous statements, he could have shown that the eyewitness, understandably, was confused and that his perceptions could not be trusted."

With respect to Alvin Ricks, Wessinger argues that counsel was deficient in failing to suggest that Ricks "was more than [a] mere spectator or that he otherwise had motivation to point the finger at Wessinger and away from himself" and in failing to note the inconsistencies in his accounts of the crime. He argues that this deficiency was prejudicial because it prevented him from refuting the State's version of events and establishing an alternative theory of defense.

Regarding the after-the-fact witnesses, Wessinger asserts that "counsel also did nothing to suggest that the witnesses who claimed that Wessinger confessed to them had their own motivations to lie, whether because of criminal charges or their own possible involvement in the crime."

Wessinger also argues that counsel's failure to highlight at trial the lack of physical evidence linking him to the crime rendered his performance constitutionally deficient. He notes that the State's latent print examiner analyzed fingerprints lifted from a cartridge box, a cartridge holder, the magazine of the murder weapon, the telephone terminal in the closet at Calendar's, and several heat coils from the terminal, and that none was a match. He argues that because the State asserted that the murder weapon was discovered across the street from his home, "the most effective way [to

refute the State's case] would have been to demonstrate to the jury that no prints were found on the gun or any other items found in the house."[3]

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Even assuming, however, that trial counsel's performance was deficient, "[i]f [Wessinger] fails to show prejudice, the alleged deficiencies in his counsel's performance need not be considered." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). "Proving prejudice requires more than a showing that counsel's 'errors had some conceivable effect on the outcome of the proceeding.'" *Dorsey v. Stephens*, 720 F.3d 309, 321 (5th Cir. 2013) (quoting *Strickland*, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." *Id.* (quoting *Richter*, 563 U.S. at 112).

The district court found that "the overwhelming evidence against Wessinger argues against a finding of unreasonableness by the state courts." Put differently, the district court determined that, even if counsel's performance was constitutionally deficient, the state court reasonably concluded that these errors did not prejudice Wessinger. At trial, the State presented the jury with ample evidence to establish Wessinger's guilt, including:

> two eyewitness identifications by survivors (Armentor and Ricks), testimony that Wessinger borrowed the gun from a friend, testimony he asked Brown, a friend, to help him, testimony he had told others he planned the robbery, and testimony Wessinger told people afterwards that he had robbed the restaurant and killed several people.

---

[3] Wessinger also argues that counsel was deficient in failing to challenge the State's forensic experts, but this challenge is wholly conclusory: Wessinger fails to specify what challenges could have been brought and fails to assert what effect any such challenge might have had on the proceedings.

Wessinger does not specifically allege how counsel's errors would have undercut this evidence and changed the outcome of the proceeding. Similarly, Wessinger does not explain what evidence effective cross-examination of the State's witnesses would have produced. Although he states that Ricks was involved in the murder, this assertion is wholly conjectural. The same is true for his contention that Armentor was either unreliable or deceptive. Importantly, Wessinger does not contend that Armentor actually saw Wessigner's photos in the newspapers prior to identifying Wessinger. As for counsel's failure to highlight the lack of physical evidence, Wessinger does not explain how this failure could have affected the judgment in light of the overwhelming evidence against him. On this background, reasonable jurists would not debate the district court's conclusion that the state court's denial of this claim was reasonable. *See Richter*, 562 U.S. at 105.

### C. Failure to Produce Material Exculpatory Evidence

Finally, Wessinger alleges that the State withheld exculpatory evidence from the defense, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The state habeas court rejected this claim on the merits, and AEDPA deference therefore applies.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. To be entitled to federal habeas corpus relief on a *Brady* claim, Wessinger must show: "(1) the prosecution suppressed evidence; (2) [the suppressed] evidence was favorable to the accused; and (3) the evidence was material either to guilt or punishment." *Brogdon v. Blackburn*, 790 F.2d 1164, 1167 (5th Cir. 1986) (internal quotation markss and citation omitted). The "touchstone of materiality is a 'reasonable probability' of a different result . . . . The question

is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Wessinger asserts that the State withheld "extensive" exculpatory evidence, including the statement Eric Armentor gave to police three days after the murder; the statement Alvin Ricks gave to the police the day of the murder; the transcript of Ricks's 911 call; the statement Willie Grigsby, the Calendar's employee who escaped the restaurant before Ricks, gave to police the day of the shooting; the statement the State's after-the-fact witness Tilton Brown gave to the police on November 29, 1995; Brown's criminal records; the cooperation plea agreement of Randolph Harden, another after-the-fact witness; and an investigative report discussing the fact that Wessinger's fingerprints were not on the murder weapon, on other physical evidence, or at the crime scene.

The district court accepted that "it is clear that certain information did not make it into the hands of the defense team for use at trial," and that this evidence was favorable. But the court concluded that, given the "quantity and quality of the evidence of guilt that was part of the record before the state court," the evidence was not material under *Brady*. We agree. Wessinger has done nothing to demonstrate how the suppression prejudiced him. He asserts: "The two eyewitnesses contradicted each other and their own statements, and other key State witnesses hoped to receive something in exchange for their testimony. The majority of the witnesses had prior criminal records that were not divulged by the State." But he again fails to explain how this information would have undermined the State's case against him. Wessinger's brief on the issue of materiality is entirely conclusory and devoid of any meaningful argument. We therefore find that the state court reasonably concluded that

No. 12-70008

Wessinger failed to satisfy *Brady*'s requirements, *see Richter*, 562 U.S. at 105, and thus that reasonable jurists would not debate the district court's conclusion.

## CONCLUSION

For the foregoing reasons, Wessinger's motion for COAs is DENIED.